**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 24-CR-202 (LLA)** |
| **JOSEPH RUBEN BAER,** | |
| **Defendant.** | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

In February 2024, Defendant Joseph Ruben Baer messaged an undercover law enforcement officer who was posing as a pedophile online.  During their conversations, the defendant revealed that he had been viewing child pornography for a year, had an "obsession with incest and boys" and "always wanted to fuck little boys," and had watched a heinous series of child pornography videos that depict the rape of a toddler boy.  He also expressed interest in sexually abusing the undercover's purported ten-year-old son.   On April 18, 2024, the defendant sent the undercover two videos that depicted him masturbating to videos of the rape and sexual abuse of prepubescent boys.  The next week, a federal grand jury indicted him for distribution of child pornography.

On May 10, 2024, the defendant was arrested and made his initial appearance before this Court.  Because the defendant was forthcoming with law enforcement following his arrest, consented to pretrial detention, and sought immediately to accept responsibility, the government allowed the defendant to plead guilty to a lesser charge, possession of child pornography.   This agreement reduced the applicable guidelines range, so the defendant has already received a significant variance.  For reasons that follow, this Court should sentence the defendant to a guidelines term of **96 months' imprisonment** to be followed by ten years of supervised release.

In support of its recommendation, the government respectfully submits this Memorandum.

## FACTUAL BACKGROUND

As set forth in the Proffer of Facts (ECF No. 22), as part of his sworn guilty plea, the defendant admitted to the following facts:

In early February 2024, a member of the Federal Bureau of Investigation Washington Field Office and Metropolitan Police Department's Child Exploitation and Human Trafficking Task Force was working in an undercover capacity from an office located in the District of Columbia. In that capacity, the undercover agent was monitoring a mobile dating application for child exploitation activity. The undercover maintained a profile on the application, the biography of which stated: "No Limits Dad looking for Tabu fun." "No Limits" and Tabu" (a misspelling of "taboo") are terms used by those with illicit sexual proclivities, including incest, the sexual exploitation of children, and child pornography. An individual later identified as the defendant, Joseph Ruben Baer, contacted the undercover agent, and the conversation moved off the dating platform and onto an encrypted messaging application. During the conversation on the encrypted messaging application, the defendant indicated to the undercover that he had an interest in, and had viewed, child pornography.

The undercover and the defendant engaged in intermittent conversation on the encrypted messaging application in the weeks that followed. On April 18, 2024, the defendant sent the undercover agent two videos that depicted the defendant laying on a bed and masturbating to child pornography while that was playing on an Apple MacBook Pro laptop. One of the child pornography videos depicts two completely nude boys, one appearing to be pubescent and the other prepubescent, in a bathroom. The prepubescent boy is on his knees, masturbating the pubescent boy's penis with his hand. The other child pornography video depicts an adult male anally penetrating a completely nude prepubescent boy. On April 24, 2024, a magistrate judge of

2

the United States District Court of the District of Columbia issued an arrest warrant on a charge of distribution of child pornography.

On May 10, 2024, the defendant traveled into the District of Columbia from his residence in Montgomery County, Maryland.  Law enforcement arrested the defendant outside of a concert venue in Northeast Washington, D.C., and seized the defendant's Apple iPhone 13 Pro Max cellphone incident to his arrest.  The defendant later consented to a search of his cellphone.  The FBI recovered the following seven videos, all of which contain child pornography, from the defendant's iPhone:

1. A 49-second video depicting an infant being anally penetrated by an adult male's finger and erect penis.

2. A 48-second video depicting a completely nude prepubescent boy being anally penetrated by an adult male's erect penis.

3. A 34-second video depicting an adult male masturbating while watching child pornography on a laptop.  The child pornography playing on the laptop depicts an infant being anally penetrated by an adult male's erect penis.

4. A 31-second video depicting a minor boy being anally penetrated by an adult male's erect penis.

5. A 20-second video depicting two adult males masturbating while displaying child pornography on a laptop.  The child pornography playing on the laptop depicts an infant being anally penetrated by an adult male's erect penis.

6. A 9-second video depicting two completely nude minor boys, one appearing to be pubescent and the other prepubescent, in a bathroom.  The prepubescent boy is on his knees, masturbating the pubescent boy's penis with his hand.

7. An 8-second video depicting a prepubescent boy performing oral sex on an adult male's erect penis.

Portions of two of the videos (i.e., the 48-second and 9-second videos) were playing on the defendant's laptop computer in the videos that the defendant distributed to the undercover agent on April 18, 2024, as described above.

\* \* \*

The Statement of Facts submitted in support of the April 24, 2024, Criminal Complaint and Arrest Warrant, (ECF No. 1-1), provides additional context for the defendant's conduct that is relevant to sentencing.  Specifically, at the outset of their conversation, the defendant told the undercover that he had seen "Matt vids[1] and other vids of the sorts," had been looking at child pornography for about a year, and had "an obsession with incest and boys."[2]  The defendant also expressed an interest in meeting up with the undercover to sexually abuse his purported ten-year-old son.  When the defendant re-initiated conversation with the undercover on April 18, 2024, he said, "[I]'m just a guy with a new found [sic] attraction to little boys" and, "[I] got a vid of me jerking off to cp if u want like idk."  The defendant then sent the undercover a video that depicted him masturbating to child pornography and said he could film more videos.  In addition, the defendant said that he was "down" to sexually abuse the undercover's purported son on April 24, 2024, but ultimately did not follow through with the meeting.

---

[1] "Matt vids" is a reference to a series of child pornography videos depicting the sadistic rape of a known toddler male victim by an adult male named Matt Estes.  The defendant's reference to "Matt vids" shows that he was well acquainted with child pornography.

[2] The defendant also sent the undercover a voice message to prove that he was not a law enforcement officer, in which he said in relevant part:  "My name is Joe, and I've always wanted to fuck little boys – so I'm not a cop."  The government will play the audio for the Court at the time of sentencing.

## PROCEDURAL HISTORY

On April 24, 2024, a magistrate judge of this Court issued a Criminal Complaint and Arrest Warrant charging the defendant with distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2), (b)(1).  (ECF No. 1).  The next day, a federal grand jury returned a one-count indictment charging the defendant with the same offense.  (ECF No. 5).

On May 10, 2024, the defendant was arrested and made his initial appearance before this Court.  (ECF No. 10).  The defendant consented to pretrial detention.

On May 30, 2024, at the first status conference in this case, the defendant informed the Court that he would be pleading guilty, and a plea agreement hearing was scheduled.  On June 24, 2024, pursuant to a negotiated plea agreement, the defendant pleaded guilty to superseding information charging him with one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2).  (ECF Nos. 18, 21, 22, 23, and 24).

A sentencing hearing is scheduled for Monday, September 23, 2024, at 11:00 a.m.

## LEGAL STANDARD

Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018).  The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors. *Gall v. United States*, 552 U.S. 38, 49–50 (2007).  The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

The Section 3553(a) factors include the following:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for –
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
>>> (i) issued by the Sentencing Commission . . .; and
>>> (ii) that, . . . are in effect on the date the defendant is sentenced; . . .
>
> (5) any pertinent policy statement –
>> (A) issued by the Sentencing Commission . . . and
>> (B) that, . . . is in effect on the date the defendant is sentenced.
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In addition to the Section 3553 factors, in child pornography cases the court should also consider the reports prepared by the U.S. Sentencing Commission specifically addressing

6

sentencing in such cases.  In 2012 and 2021, the U.S. Sentencing Commission published reports to Congress analyzing federal sentences in both production and non-production child pornography offenses. The reports recommend three categories of aggravating factors that courts should consider when imposing sentences in non-production cases: content, community, and conduct. The Commission further explained how these factors should affect a defendant's sentence:

> The presence of aggravating factors from any of these three categories, even without the presence of any aggravating factors from the other two categories, warrants enhanced punishment depending on the degree that aggravating factors from that category are present in a particular case. The presence of aggravating factors from multiple categories generally would warrant a more severe penalty than the presence of aggravating factors from a single category.

U.S. SENT'G COMM'N, FEDERAL CHILD PORNOGRAPHY OFFENSES at 321 (Dec. 2012) (hereinafter, the "2012 Report").

### Content

As outlined in the 2012 Report, this factor directs courts to evaluate the content of an offender's collection and behavior "in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained, and protected his collection over time, including through the use of sophisticated technology." *Id.* at 320.

### Community

This factor directs the Court to evaluate "the degree of an offender's engagement with other offenders — in particular, in an Internet 'community' devoted to child pornography and child sexual exploitation." 2012 Report at 320.  The Commission distinguishes between impersonal file-sharing exchanges, which involve "anonymous, indiscriminate" open exchange and no two-way communication, versus "personal" distribution in closed groups, involving two-way communication concerning child pornography and child exploitation. *Id.* at 313–14, 324.

7

*Conduct*

The third factor asks courts to assess whether an offender "has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense." 2012 Report at 320.  Notably, the Commission recommends that, in addition to criminal offenses, courts consider "non-criminal acts of sexually deviant behavior" because such behavior also indicates sexual dangerousness.  *Id.* at. 325.

\*   \*   \*

The Court must also impose a term of supervised release of not less than 5 years up to life. *See* 18 U.S.C. § 3583(k).

## SENTENCING GUIDELINES CALCULATION

The parties and Probation agree that the Sentencing Guidelines apply as follows:

**Base Offense Level**

USSG §2G2.2(a)(1)                                                                                    **18**

**Specific Offense Characteristics**

USSG §2G2.2(b)(2) – material involving prepubescent minor / minor under 12 years of age   **+2**
USSG §2G2.2(b)(3)(F) – knowing distribution                                                    **+2**
USSG §2G2.2(b)(4) – portrayal of sadistic or masochistic conduct or infant/toddler          **+4**
USSG §2G2.2(b)(6) – use of computer                                                            **+2**
USSG §2G2.2(b)(7)(C) – number of images                                                        **+4**

**Applicable Adjustments**

USSG §3E1.1(a), (b) – acceptance of responsibility                                             **-3**


**Total Offense Level        29**

With a total offense level of 29 and a criminal history category of I, the applicable guidelines range is a term of **87 to 108 months' imprisonment**.  The government's recommended sentence of 96 month's imprisonment is below the midpoint of the applicable guidelines range.

8

## THE GOVERNMENT'S RECOMMENDATION

The government respectfully recommends that the Court sentence the defendant to at term of **96 months' imprisonment** to be followed by ten years of supervised release.  For reasons set forth below, the government's recommended sentence is sufficient, but not greater than necessary, to achieve the goals of sentencing.  *See* 18 U.S.C. § 3553(a).

### A.  Nature and Circumstances of the Offense

The defendant's conduct in this case was egregious as he sought out, possessed, and further distributed videos depicting the rape and sexual abuse of the most vulnerable members of our community—very young children.  "Child pornography depicts pictorial evidence of physical sex abuse against and exploitation of children and the production and distribution of such contraband carries a multitude of harms."  *United States v. Galarza*, No. 18-MJ-146 (RMM), 2019 WL 2028710, at *6 (D.D.C. May 8, 2019) (Howell, J.); *United States v. Nickelson*, No. 18-MJ-102 (GMH), 2018 WL 4964506 (D.D.C. Oct. 15, 2018) (Howell, J.) (same); *United States v. Blanchard*, No. 18-MJ-101 (GMH), 2018 WL 4964505, at *4 (D.D.C. Oct. 15, 2018) (Howell, J.) (same).  Children captured in images and videos depicting their sexual abuse are significantly harmed at the time that the images and videos are created, and they are re-victimized and re traumatized every time an individual, like the defendant, views and shares these images for his own sexual gratification and for the sexual gratification of others.  *See Galarza*, 2019 WL 2028710, at *6 (noting that "'the perpetual nature of child pornography distribution on the Internet causes significant additional harm to victims,' [who] 'live with persistent concern over who has seen images of their sexual abuse' and how those images are being used to cause additional harm.'" (quoting 2012 Report at vii); *Nickelson*, 2018 WL 4964506, at *4 (same); *Blanchard*, 2018 WL 4964505, at *4 (same).

Courts across the country have similarly described the grave harm caused by child pornography offenders, as they drive demand for the creation of child pornography and thus further incentivize the rape and sexual abuse of children.  As one court has explained:

> [W]e have numerous victims in a case like this, not one victim.  Every image of a child, every image of a nonadult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child.  Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent.  And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of people—children who are forced into these roles.

> So although I do not take issue with the writing about what has happened to the guidelines, I think it begs the question of what is at stake here in the statutory sentencing scheme and the fact that this conduct is illegal and the concern that the Congress of the United States and the courts of this nation and the public of this nation place on it, and that is, every image has a child who has been exploited and abused, and that is the concern I have.  It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*United States v. Miller*, 665 F.3d 114, 121–22 (6th Cir. 2011) (quoting the district court) (affirming sentence and rejecting attack on the child pornography sentencing guidelines).

Here, the defendant sought out child pornography online and had been doing so, by his own admission, for at least a year.  The defendant told an undercover law enforcement officer that he had watched "Matt vids"—a particularly heinous series of child pornography depicting the rape of a toddler—and expressed interest in the sexual abuse of the undercover's purported ten-year-old son.  The defendant also sent the undercover videos that depicted him masturbating to child pornography, including a video that depicted an adult man anally raping a prepubescent boy.  When the defendant's electronics were recovered, additional videos depicting the rape of boys and an infant were recovered.  The "content" and "community" factors outlined by the Sentencing Commission are aggravating here.  The evidence in this case refutes the defendant's suggestion

that his conduct was some sort of momentary lapse in judgment.

Given the nature and seriousness of the defendant's conduct—including the content of the child pornography, which depicts the rape of toddler and infant boys, and his interactions with a man he believed had access to, and was sexually abusing, a ten-year-old boy—a significant, guidelines sentence of 96 months' imprisonment is warranted.

### B. The History and Characteristics of the Defendant

The defendant stands before the Court having enjoyed advantages that many others have not.  The defendant's sentencing materials make clear that he had a stable childhood and is supported by a strong network of family, friends, neighbors, and coworkers.  Despite all the support, the defendant accessed, downloaded, possessed, viewed, and distributed child pornography videos.  And he did not distribute videos impersonally over a peer-to-peer network, as in several of the cases he cites in support of his request for an extreme variance.  He filmed himself masturbating to child pornography videos and sent those films to a man he believed had access to, and was sexually abusing, a ten-year-old boy.

The defendant's conduct makes clear that this was not a temporary lapse in judgment or an isolated mistake.  It is also important to note that the defendant does not appear to have sought professional help for his sexually deviant criminal behavior before his arrest.  The defendant stopped offending only because he was arrested and detained.  And while he now expresses a commitment to obtaining treatment, the success of any treatment will be dependent on his being forthcoming with treatment providers.  In the psychosexual evaluation submitted by the defense, Dr. Keller appears to have credited self-serving statements made by the defendant, including that he had infrequently viewed child pornography and "denie[d] a sexual attraction or arousal to prepubescent males."  Keller Report at 12.  The statements that the defendant made to Dr. Keller

during his evaluation—which he surely knew would be offered as mitigation at sentencing—are flatly contradicted by the statements he made to the undercover—a man he believed to be a pedophile—and all the other evidence in this case.  Dr. Keller's conclusion that the defendant's admitted sexual interest in 12 or 14 years olds "is indicative of a non-deviant hebephilic sexual interest and is not diagnostically classified within a pedophilic disorder," *id.* at 18, is preposterous. The defendant's admission of an attraction to that age group indicates a sexual interest in children and is further proof that he requires a significant period of imprisonment.  Dr. Keller also concludes that "[a]lthough Mr. Baer's involvement with child pornography and online communications involving the sexual abuse of a purported 10-year-old minor are considered deviant behaviors, such behavior is not necessarily indicative of a pedophilic interest or preference."  *Id.*  This conclusion is completely undercut by all the evidence in this case, including that the defendant (i) was seeking out pedophiles online, (ii) told the undercover he had an "attraction to little boys" and "always wanted to fuck little boys," (iii) was familiar with the "Matt" series of videos that depict the sadistic rape of a toddler boy, (iv) filmed and distributed videos that showed him masturbating to the rape of prepubescent boys, and (v) possessed other videos depicting the rape of young boys including an infant.  The Court should give no weight to Dr. Keller's diagnostic impressions or her assessment of the defendant's risk of recidivism.[3]

The government acknowledges that the defendant has no prior criminal record.  However, the defendant's lack of criminal history is accounted for in the guidelines range and, in and of itself, does not provide a basis for a downward variance.  Moreover, the Sentencing Commission recently enacted an adjustment to lower the guidelines range for certain offenders without criminal

---

[3] Dr. Keller also relied on the CPORT, the validity of which is subject to scientific dispute.  *See* Nicholas Scurich & Daniel A. Krauss, *Risk Assessment of Child-Pornography-Exclusive Offenders*, 47 Law & Human Behavior 499 (2023) (attached).

history, *see* USSG §4C1.1, but explicitly provided that the adjustment is not to be extended to defendants convicted of sex offenses, *see* USSG §4C1.1(a)(5).  The defendant's lack of criminal history is unsurprising given that he was just shy of 20 years old at the time of the offense and because crimes involving the online sexual exploitation of children are committed in secret.  This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the internet, makes detection of child pornography crimes difficult.  Here, the defendant was caught only because he distributed child pornography to an undercover law enforcement officer.

The government also acknowledges that the defendant sought to accept responsibility at an early juncture in this case.  In considering this and other factors, the government agreed to allow the defendant to plead to possession of child pornography, which reduced his guidelines range from 135 to 168 months (i.e., 11.25 to 14 years) to 87 to 108 months (i.e., 7.25 to 9 years).  The factors that the defendant contends warrant a variance in his case were considered when the government fashioned its plea offer; the plea offer already represents a significant variance as it reduced his guidelines range by 4 to 5 years.

For these reasons, a within-guidelines sentence of 96 months' imprisonment is warranted.

### C.  The Need for the Sentence Imposed

The sentence imposed must reflect the seriousness of the offense; promote respect for the law; provide just punishment; afford adequate deterrence; and protect the public from further crimes of the defendant.  The government's recommendation of 96 months' imprisonment serves each of these goals.

As discussed above, the sexual exploitation of children—including the viewing, possession, and distribution of child pornography, has devastating consequences for the children depicted in these images and videos.  Once they find their way onto the internet, images and videos

depicting the sexual abuse of a child will circulate in perpetuity because individuals make the repetitive and purposeful decision to collect, save, and trade them for their own sexual gratification.

Furthermore, as noted above, consumers of child pornography, like the defendant, create a market and demand for the production of these images and videos, which depict the sexual abuse and exploitation of real children. These consumers therefore contribute to the cycle of abuse and are in part responsible for the harm suffered by children used to produce the images and videos in their collections. *See United States v. Goff*, 501 F.3d 250, 259–660 (3d Cir. 2007) ("Children are exploited, molested, and raped for the prurient pleasure of [defendant] and others who support suppliers of child pornography"). Thus, even if consumers of child pornography do not themselves molest children, their actions contribute to the abuse of children. The defendant's conduct and the harm that it perpetuates demands a sentence that will reflect the nature and circumstances of the offense, serve as a just punishment, and promote respect for the law. The government's recommended sentence would serve those goals.

Courts have also recognized the importance of deterrence in fashioning an appropriate sentence in child pornography cases. *See Osbourne v. Ohio*, 495 U.S. 103, 109–10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Ferber*, 458 U.S. 747, 760 (1982) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."); *United States v. Fry*, 851 F.3d 1329, 1332 (D.C. Cir. 2017) (affirming 108-month sentence in possession of child pornography case, which would "deter [the defendant] and others who may be

14

inclined in doing similar kinds of things"); *Goff*, 501 F.3d at 261 ("Deterring the production of child pornography and protecting the children who are victimized by it are factors that should have been given significant weight at sentencing."); *United States v. Barevich*, 445 F.3d 956, 959 (7th Cir. 2006) ("Transporting and receiving child pornography increases market demand.  The greater concern under the Guidelines is for the welfare of these exploited children.  The avenue Congress has chosen to weaken the child pornography industry is to punish those who traffic in it.").  The government's recommended sentence would deter the defendant and others from reoffending.

Finally, this Court should consider that sex offenders generally have a high rate of recidivism.  *See, e.g.*, *Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (rejecting post-conviction challenge to defendant's sentence in child exploitation case because court's comments about sentencing on recidivism were "supported by substantial authority") (collecting cases).  The information that the defendant has put forth concerning his risk of recidivism is not helpful, both because of the methodology used and Dr. Keller's reliance on his self-serving statements.  *See, e.g.*, *United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) ("Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children.").

For all the foregoing reasons, the government's recommendation of a sentence of 96 months' imprisonment is appropriate in this case.

**D.  The Need to Avoid Unwarranted Sentencing Disparities**

Congress has directed the court to consider avoiding *unwarranted* disparities among similarly situated offenders.  But Section 3553(a)(6) "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d

432, 435 (5th Cir. 2010).  When an offense is uniquely serious, courts will consider the need to impose "stiffer sentences" that "justif[y] the risk of potential disparities." *United States v. Jones*, 846 F.3d 366, 372 (D.C. Cir. 2017); *see also United States v. Accardi*, 669 F.3d 340, 346 (D.C. Cir. 2012) (concluding that a within-guidelines sentence for a child pornography offense did not produce an unwarranted disparity when the images distributed by the defendant "were much more aggressive and troubling than the images distributed by other offenders" who received lesser sentences).

The defendant cites several cases in which defendants received significant downward variances for possessing child pornography.  The facts of those cases all appear to be readily distinguishable from this case, where the defendant expressed an interest in the sexual abuse of prepubescent boys and actually produced and distributed videos of himself masturbating to child pornography videos.  The defendant is not similarly situated to most offenders who are charged with possession of child pornography.  Judiciary Sentencing Information data indicates that the mean sentence imposed for an offender with the defendant's guidelines was 72 months and the median was 70 months, meaning that half of all offenders with the defendant's guidelines received a sentence greater than 70 months' imprisonment.  (Had the defendant pleaded guilty to the offense for which he was indicted, the JSIN data indicates that the mean and median sentence is 96 months' imprisonment—the government's recommended sentence here).

Accordingly, the government's recommendation of a term of 96 months' imprisonment fairly accounts for the defendant's egregious criminal conduct and would not create an unwarranted disparity.

**E. Restitution**

The FBI reviewed the defendant's electronic devices and sent media files that appeared to be child pornography to the National Center for Missing and Exploited Children for review. NCMEC identified 16 files (10 still images and 6 videos) from three different "series" of child pornography.   The government had contact information for only one of those victims and attempted to obtain a restitution request, but it has not yet received any response.   Although this victim is entitled to at least $3,000 in mandatory restitution, *see* 18 U.S.C. § 2259(b), the Court cannot award restitution without determining the victim's losses and engaging in loss causation analysis, and thus cannot award restitution in the absence of a claim, *see, e.g.*, *United States v. Rodriguez*, No. 23-50024, 2024 WL 3338311, at *2 (9th Cir. July 9, 2024).   If the government should obtain information that would entitle a victim to restitution, the government may submit a restitution request in the future.   *See* 18 U.S.C. § 3664(d)(5).

## <u>CONCLUSION</u>

For the foregoing reasons, the government respectfully recommends that the Court sentence the defendant to at term of **96 months' imprisonment** and ten years of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

Dated: September 20, 2024          By:     */s/ Paul V. Courtney*
Paul V. Courtney
D.C. Bar No. 1034252 / N.Y. Bar No. 5392337
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
601 D Street NW
Washington, D.C. 20530
(202) 252-1719
Paul.Courtney@usdoj.gov